(No. 37617.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH GALLOWAY, Plaintiff in Error.

*Opinion filed May 27, 1963.—Rehearing denied September 26, 1963.*

Julius L. Sherwin and Theodore R. Sherwin, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Edward J. Hladis and Ronald W. Olson, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

This writ of error is prosecuted by defendant, Joseph Galloway, who was sentenced to the penitentiary for a term of five to eight years after a jury in the criminal court of Cook County had found him guilty of unlawfully possessing narcotic drugs. Seeking reversal, he contends that he was not proved guilty beyond a reasonable doubt, that the prosecutor made unfair and prejudicial remarks in the presence of the jury, that improper evidence was admitted, and that the jury was improperly instructed.

Shortly after 1:00 P.M. on December 1, 1960, five narcotics investigators employed by the State of Illinois, having obtained a search warrant, were admitted to an apartment located at 6359 S. Stewart Avenue in Chicago. Upon their entry defendant was found in the bathroom, clad only in shorts, while his wife and a woman named Dorothy Files were in a front room. Also present were defendant's children aged 4, 2 and 1 years. After reading the search warrant the officers started a systematic search of the apartment and one found a sifter, measuring spoons and a pie tin in a paper sack on a kitchen shelf. As the result of both search and voluntary disclosure by defendant it was also discovered that there was approximately $4000 secreted in various parts of the apartment. Another officer found in a bedroom dresser drawer a small coin envelope containing a white powder. This envelope was in a packet of letters and papers some of which were addressed to and belonged to the defendant. A field test of the powder disclosed that it was a derivative of opium and a subsequent chemical analysis established that it was a mixture of heroin and milk sugar. Defendant was confronted with the discovery and, according to one officer, dropped his head and made no reply when asked if the envelope was his. Another officer testified that defendant denied ownership of the envelope in reply to a question asked by said officer. The defendant's wife, in response to a similar

question, denied that it was hers or that she had ever seen it before. Dorothy Files who was visiting the wife, was questioned briefly and permitted to leave, after which defendant was placed under arrest.

To support a conviction of the crime of unlawful possession of narcotic drugs the People must prove not only that the accused had knowledge of the presence of the narcotics, but also that they were in his immediate possession and control. (*People* v. *Smith,* 20 Ill.2d 345; *People* v. *Matthews,* 18 Ill.2d 164.) At the same time, however, we have adopted the view that actual physical possession is not required to be proved, it being sufficient if constructive possession is established, and further, because the element of knowledge is seldom susceptible of direct proof, have held that knowledge may be proved by evidence of acts, declarations or conduct of the accused from which it may be fairly inferred that he knew of the existence of the narcotics at the place where they were found. (*People* v. *Embry,* 20 Ill.2d 331; *People* v. *Mack,* 12 Ill.2d 151.) In particular, in cases such as we have here, it is our view that "where narcotics are found on the premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the mind of the jury * * * a reasonable doubt as to his guilt." (*People* v. *Nettles,* 23 Ill.2d 306, 308-309.) Whether there is possession and whether there is knowledge are both questions of fact to be determined by the jury, or by the court where a jury is waived, and, as in the case of other factual determinations committed to a jury in criminal proceedings, its findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. *People* v. *Mack,* 12 Ill.2d 151.

The record before us contains neither direct proof of knowledge, nor proof of actual physical possession by defendant, and it is his contention that there is no proof which permits, beyond a reasonable doubt, either an inference of knowledge or a finding of constructive possession. We find, however, not a lack of evidence, but merely a conflict in evidence, and that the conclusions and inferences to be drawn therefrom rest completely upon which witnesses the jury chose to believe.

Defendant, supported by his wife, testified that he did not live in the apartment at the time of the search, but that he resided in a single room at 6501 S. Wentworth Avenue. In substance, it was their further testimony that they had lived separate and apart for about six months prior to the date of defendant's arrest; that defendant came to his wife's apartment from time to time to visit the children, to take a bath and to count his money; that he received his mail there; that he kept no clothing there; and that defendant paid the expenses of the apartment. Explaining the presence of the large sum of money and his personal papers found in the apartment, defendant testified that he did not trust banks and that his valuables were not safe at the place where he roomed. In connection with his possession of $4000 it was brought out on cross-examination that defendant was unemployed and drawing compensation of $30 a week at the time of arrest, and that prior to his unemployment he had worked for two years as a liquor store clerk for a salary of $70 a week.

As opposed to the defense testimony, officers who participated in the search testified that they had found a large quantity of men's clothing in the apartment, as well as the money, mail and personal papers admittedly belonging to defendant, that it appeared defendant and his wife occupied the same bedroom, and that defendant, when furnishing information for an arrest report, had given his address at 6359 S. Stewart Avenue.

Considering the People's evidence and the frailties and improbabilities inherent in the testimony of defendant and his wife, we are of the opinion there is credible evidence from which the jury could with reason conclude that the premises upon which the narcotics were found were under the control of defendant. The same evidence gives rise to an inference of knowledge and possession which, under the circumstances of the case, is sufficient to establish his guilt beyond a reasonable doubt.

During his opening statement the prosecutor referred to the large sum of money found in the apartment and, during the trial, witnesses were also permitted to testify concerning the money over defendant's objections. It is contended here, as it was below, that all of these references to the money were improper as tending to show defendant guilty of a crime, (*viz.,* the sale of narcotics,) other than the crime for which he was being tried. We see no merit to this contention. While it would be enough to say that defendant waived his objections by going into the matter of the money during his own direct examination, (see: Cleary, Handbook of Illinois Evidence, sec. 1.14,) we agree with the trial court that such evidence was relevant to the issue of defendant's control over the apartment. The test of admissibility of evidence is whether it fairly tends to prove the particular offense charged and any circumstances may be put in evidence which tend to make the proposition at issue either more or less probable. (*People* v. *Allen,* 17 Ill.2d 55, 63.) Further, even if it be assumed the references to the money suggested to the jury the crime of selling narcotics, in a criminal case, where evidence is relevant and otherwise admissible, it is not to be excluded because it may also have a tendency to prejudice the accused. *People* v. *Jackson,* 22 Ill.2d 382, 391.

The flour sifter, measuring spoons and pie tin found in a sack in the apartment kitchen were offered into evidence by the prosecution but were denied admission be-

cause there had been no connecting proof to establish that they had been used as narcotics paraphenalia. Defendant contends now that the testimony of the People's witnesses concerning these items and their exhibition before the jury was prejudicial error. We do not find, however, that objection was ever made to the testimony of the witnesses now complained about and, moreover, defendant's cross-examination of the witnesses brought out to the jury that the items were ordinary household utensils to which no criminal significance could be attached. Under the circumstances, we cannot say that prejudicial or reversible error occurred.

A Chicago police officer, George H. Smith, was called as a rebuttal witness by the prosecution to testify as to defendant's reputation for truth and veracity. And while defendant now makes varied attacks on his testimony and competency, we find that the single contention properly preserved for review by defendant's written motion for a new trial, (See *People* v. *Hunter,* 23 Ill.2d 177; *People* v. *Flynn,* 8 Ill.2d 116,) is whether prejudicial error occurred when the witness, after being asked on cross-examination the date he had first met defendant, responded: "I would have to look at the records. This was some time ago." Upon objection by defendant, and after denying a motion for a mistrial, the court instructed the jury to disregard the answer of the witness and to erase it from their minds. While we agree that the answer was unresponsive, we are not in accord with defendant's contention that it constituted evidence of a distinct and substantive offense other than the one for which he was being tried. At best it could have done no more than to create an inference that defendant had a police record, and under the circumstances which show that the response was prompted to a degree by the insistence of defendant's counsel that the witness fix the exact date on which he had first met the accused, we are of the opinion that reversible error and prejudice were

averted by the court's prompt and timely admonition to the jury.

During final argument to the jury, defendant's counsel commented upon the charge and the evidence, and then stated: "* * * this is what they have to prove beyond a reasonable doubt before you can send him from the bar of the court to wherever he may be committed." At this the prosecutor objected, saying: "Objection, inasmuch as the offense is probationable,", but such objection was overruled by the court. Defendant made a motion for a mistrial, which was denied, and it is contended that this ruling was reversible error. Although several decisions of this court have found it to be serious error for the prosecutor to discuss the possibility of probation in his argument to the jury, (*People* v. *Burgard,* 377 Ill. 322, 330-331; *People* v. *Klapperich,* 370 Ill. 588, 594; *People* v. *Isbell,* 363 Ill. 264, 269,) it is our opinion that those decisions do not have controlling application here since the subject was injected by way of objection rather than argument. Where, as in the present case, the jury has nothing to do with fixing the punishment, we have held that it is improper for either side in a criminal case to argue the punitive effect of the jury's verdict. (*People* v. *Klapperich,* 370 Ill. 588, 594; *People* v. *Panczko,* 20 Ill.2d 86, 88.) It was defense counsel who first referred to commitment, thus provoking the objection, and we are loathe to say that reversible error occurred, particularly since the trial court promptly overruled the prosecutor's objection.

Complaint is next made that the court erred in giving People's instruction No. 10, which read: "The Court instructs the jury in the language of the statute that it is unlawful for any person to possess, have under his control, or compound any narcotic drugs except as authorized in the Uniform Narcotic Drug Act." Defendant contends, first, that there was no evidence that he possessed or controlled narcotics, and, second, that so much of the in-

struction as relates to the compounding of a narcotic drug was misleading and improper, in that it suggested a separate and distinct crime for which there was no support in the proof. What has already been said concerning the sufficiency of the evidence to establish the necessary knowledge and possession disposes of the first contention, and it is our opinion that the remaining contention is equally without merit. The instruction defines the offense of unlawful possession in the language of the statute and, unquestionably, includes a reference to the crime of compounding a narcotic drug which was not applicable to the facts in this case. However, as pointed out in *People* v. *Lyons,* 4 Ill.2d 396, and *People* v. *Kessler,* 333 Ill. 451, it is not necessarily error to give such an instruction, and whether or not an instruction in the language of a statute is misleading depends upon the facts and circumstances of the particular case. Here, the other instructions given to the jury, and the verdict returned, make it obvious that the jurors were in no manner misled by this instruction.

Our review of the record satisfies us that defendant's guilt was proved beyond a reasonable doubt, and that he received a fair trial, free from prejudicial error. Accordingly, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*