THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL McCoy, Defendant-Appellant.

(No. 55736;

First District—June 4, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, and Boyd L. Gates, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant Attorney General, and Robert A. Novelle and George M. Elsener, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Paul McCoy was charged with the offense of unlawful possession of narcotic drugs. (Ill. Rev. Stat. (1967) ch. 38, par. 22—3.) After having been found guilty by a jury, he was sentenced to not less than five nor more than six years in the penitentiary. In this appeal defendant asserts the following: 1) Where an informer executes an affidavit for a search warrant using a fictitious name, the warrant should be quashed. 2) Such an affiant should be produced upon the demand of defendant. 3) The evidence adduced at trial does not sustain guilt beyond a reasonable doubt. 4) The trial judge applied an incorrect legal test in determining that certain pre-trial statements of a State's witness could be withheld from the defense. 5) Certain prosecutorial tactics deprived defendant of a fair trial.

We affirm.

On May 8, 1968, an informer for the Chicago police appeared before a judge and alleged that he had purchased narcotics from Paul McCoy that day, and also that he had observed other narcotics and injection paraphernalia in McCoy's apartment. The informer signed the affidavit with the name "Jose Rios." Based on these facts, a warrant issued. On May 9, 1968, the police executed the warrant at McCoy's apartment. After gaining entrance they found McCoy and Paul Gonzales in the same bed, the latter being dead from an overdose of narcotics. McCoy's arm was extended over the side of the bed, and a few inches from his hand a packet containing a powdery substance, later analyzed as heroin, was lying on the floor. It is for possession of this heroin that defendant McCoy was convicted.

On September 30, 1968, and again on December 11, 1968, the court below heard evidence on defendant's motions to quash the warrant and suppress physical evidence. Some testimony was adduced that raised an inference that "Jose Rios" was not the true name of the affiant. The court refused to consider the identity of the affiant as a justiciable issue. This, alleges defendant, was error. As authority for his allegation, defendant cites the case of *United States ex rel. Pugh v. Pate* (7th Cir. 1968) 401 F.2d 6, *cert.* denied, 394 U.S. 999 (1969) which held that when an affiant for a search warrant uses a false name, the warrant will be considered void.

The recent case of *People v. Stansberry* (1971), 47 Ill.2d 541, N.E. 2d discusses this same issue. There the Supreme Court stated at pages 544 and 545:

"In support of their contention that the search warrants were void, defendants cite United States ex rel. *Pugh v. Pate* (7th Cir. 1968), 401 F.2d 6, holding that a warrant issued pursuant to an

affidavit signed with a false or fictitious name is void. Contrary to this finding we have previously held that the use of a fictitious name by an affiant to a search warrant does not constitute a violation of a defendant's constitutional rights. (*People v. Mack,* 12 Ill.2d 151; *People v. Smith,* 40 Ill.2d 501.) The question thus presented is whether the Pugh case has any binding effect on this court when the issue has not been passed on by the United States Supreme Court \* \* \*. Under such circumstances decisions of the lower Federal courts can be held to be no more than persuasive and certainly not binding on state courts.

Following our previous decisions in *People v. Mack,* 12 Ill.2d 151, and *People v. Smith,* 40 Ill.2d 501, we reaffirm that the use of a fictitious name by an affiant to a search warrant does not constitute an abridgment of constitutional rights. *People v. O'Kiersey,* 46 Ill.2d 198."

The defendant further claims that when the State refused to produce Rios, he was denied a fair hearing on the motion to quash the search warrant and that he was denied access to a witness whose presence was necessary for presentation of the defense at trial.

■■ In an instance such as appears in this case, the people are under no obligation to present an informer at a hearing to quash a search warrant. *People v. Smith* (1968), 40 Ill.2d 501, 241 N.E.2d 185.

The court in *Stansberry* was confronted with the claim that an informer for a search warrant was necessary for a proper defense when the case was tried on its merits. The court made the following distinction at page 548 which we think is dispositive of this issue.

"Harvey next contends that the affiant in the complain for the search warrant should have been made available to him as his witness at the trial on the merits, as the witness might have been able to exculpate him. He cites *Roviaro v. United States,* 353 U.S. 53, 1 L.Ed.2d 639, 77 S.Ct. 623, and a number of other cases to the effect that fundamental fairness demanded the presence of affiant at the trial. But unlike the facts in Roviaro, the affiant here merely appeared before the judge who issued the search warrant. He was not present at the time the warrant was served nor at Harvey's arrest. *Whether he would have been able to identify Harvey as the individual he described in his complaint would relate only to the question of probable cause for the issuance of the search warrant and would have had no bearing on guilt or innocence of the crime charged.* Under such circumstances we have frequently held that Roviaro is not applicable and that it is not error to deny the production of such a witness where his

testimony would not be relevant. *People v. Mack.* 12 Ill.2d 151; *People v. Williams*, 38 Ill.2d 150; *People v. Connie*, 34 Ill.2d 353." (Emphasis added.)

■■ Defendant first alleges, in arguing that he was not proven guilty beyond a reasonable doubt, that the State never adequately established his possession of narcotics. To show possession of narcotics, the State must establish "knowledge on the part of the defendant of the presence of narcotics and must establish that the narcotics were in the immediate and exclusive control of defendant." (*People v. Nettles* (1961), 23 Ill.2d 306, 307, 178 N.E.2d 361.) Where narcotics are found on the premise under the control of defendant, this fact gives rise to an inference of knowledge and possession which may be sufficient to sustain a conviction for unlawful possession, absent other facts and circumstances which might leave in the mind of the jury a reasonable doubt as to defendant's guilt. *Nettles, supra.*

■■ Defendant would have us accept the presence of the deceased Gonzales (who died from an overdose of narcotics), as such a fact or circumstance which would defeat the inference. Mere presence of another person does not, of itself, accomplish destruction of the inference. Witness the case of *People v. Embry* (1960), 20 Ill.2d 331, 169 N.E.2d 767 where defendant was convicted of possession of narcotics found in his apartment even though five other persons were present.

Defendant argues that his case is analogous to *People v. Pugh* (1967), 36 Ill.2d 435, 223 N.E.2d 115. Pugh's conviction was reversed although narcotics were found behind the baseboard of a room in which he was sleeping. However, in the *Pugh* case, the court found that the lack of evidence that Pugh rented the apartment successfully rebutted the inference which is raised by fact of possession. Also, there was evidence that Pugh was then living with his parents at another address. We find no evidence in the case before us which tends to show defendant's lack of possession of the apartment.

Defendant also tries to analogize his case to *People v. Bolden* (1968), 96 Ill.App.2d 129, 237 N.E.2d 748, a case which we find distinguishable from the case at bar on its facts. In *Bolden*, an officer with a warrant entered the apartment in which defendant and his wife, a known narcotics user, resided. Defendant was in the living room with his leg in a cast. The officer proceeded to a back bedroom, and there, under a bed, found a syringe. The court found that the location of the syringe in relation to the defendant, coupled with evidence that his wife was a user and had, at that time, fresh needle marks on her arm, proved sufficient to raise a reasonable doubt of defendant's guilt.

We have here a different situation. Although Gonzales was a narcotics

user, testimony was introduced that defendant had needle marks on his arm the day of the search. The narcotics were not found in a position where they could have as easily belonged to Gonzales as well as defendant, but rather they were found inches from defendant's hand. Whereas Bolden was not under the influence of narcotics when the search of his residence was made, defendant here according to testimony, was in a "narcotic stupor" or "nod." We, therefore, find *People v. Bolden* distinguishable from this case.

Finally, defendant urges us to take notice of *People v. Archie* (1969), 105 Ill.App.2d 211, 245 N.E.2d 59. In that case, the defendant was taken to a school room to be interrogated about an allegation that he was selling marijuana. The police saw him drop his arm, and a marijuana cigarette was found beside his foot below where his hand went. Although "organic" leaves were found in his pocket, they were never demonstrated to be marijuana. The court reversed his conviction quoting from *People v. Dougard* (1959), 16 Ill.2d 603, 607, 158 N.E.2d 596:

> "While circumstantial evidence is legal evidence, yet to warrant a conviction on such evidence the facts proved must so thoroughly establish the guilt of the person accused as to exclude every reasonable hypothesis of his innocence."

■■ The evidence before us is much more substantial. Defendant rented the apartment in which he was found; he had been living in it for some time; he was found with the narcotics inches from his fingertips; he had fresh needle marks on his arm; he was in a narcotic stupor. These facts, believed by the jury, would support a finding of guilty. In view of all this evidence, the possibility that Gonzales possessed the narcotics is not a reasonable hypothesis which would cause us to reverse defendant's conviction.

Defendant next alleges that the evidence adduced from the arresting officers was so contradictory as to preclude a verdict of guilt beyond a reasonable doubt. Defendant attempts to buttress this allegation by demonstrating inconsistencies between the police officers' report, their grand jury testimony, and their testimony at trial.

The inconsistencies complained of are concerned with whether or not defendant made statements upon his arrest, the number of "fresh" needle marks on defendant's arm when arrested, whether force was used to enter defendant's apartment, the condition of the dead man's body, and whether defendant was asleep or in a "narcotic stupor."

■■ The earlier report and grand jury testimony were not used as substantive evidence at trial, but only for purposes of impeachment. Thus, discrepancies complained of do not go to the question of whether sufficient evidence was adduced at trial to support the jury's verdict, but

rather to the issue of the witnesses' credibility. This credibility is a question for the jury, with its superior opportunity to study the demeanor of the witnesses. The inconsistencies in the substantive evidence were very minor, and such discrepancies go only to the question of the weight to be given the testimony, a question for the trier of fact. *People v. Parker* (1968), 98 Ill.App.2d 146 240 N.E.2d 475.

Accordingly, we find that the evidence was sufficient to sustain the defendant's guilt beyond a reasonable doubt.

Defendant argues that the trial judge applied an improper test in determining that certain pre-trial statements of a State's witness should be withheld from the jury, and that consequently the conviction should be reversed. During the trial the defense made a request for police reports, grand jury testimony, preliminary hearing testimony, and the grand jury "prep" sheet. The State immediately tendered the police report it had in its custody and the grand jury minutes. The State did not have a copy of the preliminary hearing transcript, but it would have been available to the defendant had he called the proper court reporter.

When the request for the "prep" sheet came up, the State objected to its use on the grounds that there was no showing that the witness adopted the statement as his own, that there was no signature affixed to it, and that the origin of the particular prep sheet in issue was unknown. The State also requested the court to peruse the sheet to determine if it would be of impeaching value. After studying the sheet the court replied, "I will sustain the State's objection to the turning over of this report. I will *also* note that there is nothing impeaching in the report." (Emphasis added.)

It is the last sentence of the trial court's ruling which defendant attacks as stating an improper basis for ruling on defendant's request. We must note, however, that the court studied the document after the State had raised *all* of its objections to the "prep" sheet, and made a ruling based upon its findings. This procedure was suggested in *People v. Marshall* (1969), 112 Ill.App.2d 426, 251 N.E.2d 326. We must also note that the judge's finding that the document was not impeaching was prefaced by the word "also," and thus his sustaining of the State's objection must have been predicated on the other grounds put forward, *i.e.*, the statement was not substantially in the language of the witness. A "prep" sheet was before this court in *People v. Torello* (1969), 109 Ill.App.2d 433, 248 N.E.2d 725 U.S. *cert.* denied in 397 U.S. 972 (1970). This court stated at page 441:

"The State noted that this was a preparation sheet in the nature of

the work product of the office of the State's Attorney, and it would be unfair and improper to take these preparation sheets and compel a witness to stand for impeachment on them for some inconsistency which might exist between that witness at the trial and what had been verbally sketched out on the sheet by another person. We find no error here. *It is clear that the statement was a summarization of [witness's] grand jury testimony, not prepared by him and not in his language.*" (Emphasis added.)

Defendant cites the case of *People v. Robinson* (1970), 46 Ill.2d 229, 263 N.E.2d 57 wherein the court, in considering an issue identical to that raised by defendant here, states at page 234:

"The State's Attorney contends that this sheet is a work product of his office and not a verbatim or substantially verbatim transcript of a statement of the witness. A copy of the preparation sheet is attached as an appendix to the State's brief and it appears to be a substantially verbatim transcript. In the absence of proof to the contrary, it should be available to the defendant on a retrial."

■■ We must note, however, that the *Robinson* decision came down after defendant's trial was completed. Therefore, we find no error in the trial court's sustaining the State's objection to production of the "prep" sheet. Finally, defendant argues that he was deprived of a fair trial by prosecutorial tactics in that: a) evidence was introduced that defendant committed other crimes, and b) the prosecutor persisted in introducing inadmissible evidence.

■■■ The evidence of other crimes of which defendant complains consists of: First, the prosecutor's question following defendant's testimony that Gonzales was drunk, *i.e.*, "You know that a drunk man who takes a shot of heroin just about commits suicide?" While defendant finds an inference of the crime of murder, we do not. The question was immediately struck, and we find it harmless. Second, a police officer answered defendant's cross-examination inquiry as to the amount of narcotics present, "That would have to be to the individual selling it." Although the answer is non-responsive, we do not find an inference that defendant was guilty of selling narcotics, and thus find no prejudice. Third, a police officer testified that he also confiscated a vile containing a barbiturate capsule from defendant's apartment. This testimony was stricken by the trial court, and we feel that the error here was also harmless.

The inadmissible evidence which defendant alleges the prosecutor sought to introduce consists of the prosecutor's attempt to admit evidence of documents found in defendant's drawer, and his attempt to elicit testi-

mony as to a hypodermic needle, a syringe, and bottle cap found in a bathroom common to more than one tenant in defendant's apartment house.

■■ Evidence of documents was never introduced. The trial court promptly sustained defendant's objection. While testimony of a hypodermic needle, syringe and bottle cap was given, the fact that the court sustained objections to it and instructed the jury to disregard it removed any harmful effect the testimony may have had.

The evidence at trial was more than adequate to prove defendant guilty beyond a reasonable doubt. The errors complained of were minor, and do not warrant reversal of this case.

Judgment affirmed.

McNAMARA, P. J., and DEMPSEY, J., concur.