(No. 42542.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JOSEPH BELL, Appellant.

*Opinion filed November 30, 1972.*

THOMAS D. DECKER, of Chicago, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, ELMER C. KISSANE, Assistant State's Attorney, and ZENON FOROWYCZ and JOHN O'ROURKE, JR., of counsel), for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

The defendant was found guilty by a jury, in the circuit court of Cook County, of the unlawful possession of narcotics (Ill.Rev.Stat. 1967, ch. 38, par. 22–3), and was sentenced to a prison term of not less than 5 nor more than 9 years.

On appeal, he contends: (1) there was insufficient evidence to support his conviction, and the court erred in the admission of evidence; (2) the evidence was insufficient to prove "the elements of knowledge, intent and sanity because the state failed to rebut the defendant's testimony as to addiction and its effects," and that he was improperly denied expert medical testimony as to the effect of narcotic addiction on his ability to knowingly possess narcotics; (3) the search was invalid in that it was too broad and was issued on the complaint of an affiant under a fictitious name; (4) he was denied the right to have the jury instructed in this regard; and (5) the sentence was excessive.

On September 29, 1967, at about 3:00 A.M., pursuant to a search warrant, three narcotics officers entered the first-floor apartment at 354 East 53rd Street, Chicago. The warrant had been issued upon the complaint of an affiant under a fictitious name. The complaint stated that the affiant had purchased a package of heroin at that apartment from the defendant, and that additional heroin, a hypodermic needle and a syringe were then there. The apartment was occupied by the defendant, his mother, his seven-year-old nephew and several others who rented bedrooms from the mother.

While there were certain conflicts in the testimony, it established generally that when the officers entered the apartment a woman named Mary was in the hall outside the defendant's bedroom and the defendant and another person were in the bedroom. Upon search of the defend-

ant's bedroom, the officers found and seized seven packets of heroin in a watch case or box on the bed, about an arm's length from where the defendant was standing, two hypodermic needles and a heroin cooker from the top of the dresser, and another hypodermic outfit on the floor.

The defendant and the other man in the bedroom were arrested. The defendant was not completely dressed at the time and he then dressed with clothes which he obtained from the dresser and closet. He admitted that the bedroom was his, but at the trial he denied any knowledge of the narcotics found in this room.

The defendant contends that the inconsistencies between the testimony of one of the arresting officers at the hearing on the motion to quash the search warrant, and his testimony at the time of the trial, bore so directly on the question of the defendant's control of the narcotics as to render the evidence so unsatisfactory as to raise a reasonable doubt of his guilt. *People v. Catavdella (1964), 31 Ill.2d 382.*

At the hearing on the motion to quash the search warrant, the officer testified that the woman present was just inside the door of the defendant's bedroom. It is not clear whether his testimony related to the time of the arrest or the time of entry into the apartment. At the trial, the same officer testified that at the time he entered the apartment the woman was in the hallway just outside of the defendant's bedroom. At the first hearing, the officer testified that the narcotics were in a closed watch case on the bed which he picked up and opened, while at the trial he did not testify whether the case was open or closed, and he stated that another officer picked it up. The other officer testified at the trial and stated that the watch case was open and that he recovered the narcotics.

The inconsistencies, to the extent there are any, are minor. Such discrepancies in testimony taken at different times are not unusual and go only to the weight to be

given the testimony by the jury; they do not destroy the credibility of the witnesses. (*People v. Clay (1963), 27 Ill.2d 27, 32; People v. Thomas (1960), 20 Ill.2d 603, 608.*) The minor variations in the testimony do not compel us to find that the evidence was so unsatisfactory as to raise a reasonable doubt of the defendant's guilt.

The defendant concedes that he was the person nearest to the narcotics, but contends that because two or three other persons were in his bedroom he could not be found to have had possession of the narcotics. We recognize that the evidence must show that the defendant knew of the presence of the narcotics and that they were in his control. (*People v. Galloway (1963), 28 Ill.2d 355, 358; People v. Fox (1962), 24 Ill.2d 581, 584.*) However, under the circumstances of this case, the presence of other persons in his bedroom would not preclude a finding by the jury of an inference of knowledge and possession of narcotics by the defendant alone. *People v. Nettles (1961), 23 Ill.2d 306, 308.*

The requisite knowledge may be proved by evidence of acts, declarations or conduct from which it may fairly be inferred that the accused knew of the existence of the narcotics at the place they were found. (*People v. Smith (1960), 20 Ill.2d 345, 350-351; People v. Mack (1957), 12 Ill.2d 151, 159-160.*) Where narcotics are found on premises under the defendant's control, it may be inferred that he had requisite knowledge and possession, absent other facts and circumstances which might leave a reasonable doubt as to guilt in the minds of the jury. *People v. Nettles (1961), 23 Ill.2d 306, 308-309.*

The evidence established that the narcotics were found on the bed in the defendant's bedroom, close to where he was standing; that they were in a watch case or box, which was either open or closed; that other instruments used in administering narcotics were found elsewhere in his room; and that the defendant had been addicted to drugs for 12 or 13 years. Whether the

defendant had the requisite knowledge and possession of the narcotics is a question of fact for the jury to determine. The record does not warrant our setting aside the jury's findings. *People v. Holt (1963), 28 Ill.2d 30, 33.*

The defendant asserts that the trial court erred in the admission of certain evidence on cross-examination of a police officer wherein the officer was asked why he did not serve the search warrant on the defendant's mother, the person to whom the apartment was leased, and his answer was that he had information that the defendant was selling narcotics out of that apartment. The warrant was actually served on the defendant, and his counsel objected to the answer that the defendant was selling narcotics out of the apartment as not responsive. The court did not rule on the objection, but rather asked if the defendant desired to have the question read back to the witness. Upon receiving an affirmative reply, the question was reasked and reanswered in the same way without further objection and there was no request that the answer be stricken or that the jury be told to disregard it. The complete interrogation of the witness suggests that the answer was invited and induced by the defendant, and he may not now complain of such testimony. *People v. Burage (1961), 23 Ill.2d 280, 283.*

The search warrant designated the entire apartment in question as the premises to be searched. The defendant contends that this designation was too broad and should have been limited to his bedroom. We disagree. This particular apartment was one unit for residential use. It appears that the defendant had access to its various parts. The warrant authorized the search of the defendant and the entire first-floor apartment by the officers. It sufficiently described the apartment that was to be searched and was not overly broad. *People v. Cain (1966), 35 Ill.2d 184, 186; People v. Watson (1962), 26 Ill.2d 203, 205.*

The defendant also contends that the use of a fictitious name by the affiant on the complaint for the

search warrant rendered the warrant void. We recently held that the use of a fictitious name to support the issuance of a search warrant does not violate any constitutional right. (*People v. Stansberry (1971), 47 Ill.2d 541, 544.*) We see no reason to reconsider or depart from that holding.

The defendant asserts that his drug addiction was such that it was a defense to the charge against him in the nature of insanity or inability to form the necessary knowledge or intent to be guilty of the crime charged. In *People v. Jackson (1968), 40 Ill.2d 143,* the defendant made a similar contention, relying upon *Robinson v. California (1962), 370 U.S. 660, 8 L.Ed.2d 758, 82 S.Ct. 1417.* In *Jackson,* at page 144, we pointed out that in *Robinson* the Supreme Court noted that a State might impose criminal sanctions against the unauthorized manufacture, prescription, sale, purchase, or possession of narcotics within its borders, but held that the status or condition of narcotics addiction could not be made a criminal offense punishable by imprisonment.

Subsequently, in *People v. Jones (1969), 43 Ill.2d 113,* a similar contention was raised. The defendant there asserted that he was not guilty of a deviate sexual assault by reason of the fact that his conduct was involuntary and a manifestation of his disease of homosexuality. In *Jones* we observed that the United States Supreme Court in *Robinson* held that a California statute which made it a crime to be addicted to narcotics even though the person had not touched any narcotic drug within the State, and whether or not he had been guilty of any irregular behavior there, inflicted a cruel and unusual punishment in violation of the eighth and fourteenth amendments. Subsequently, the Supreme Court, in *Powell v. Texas, 392 U.S. 514, 533-535, 20 L.Ed.2d 1254, 88 S.Ct. 2145,* explained that the California statute in *Robinson* was objectionable because it punished a condition without any reference to any acts committed within the State. 43 Ill.2d 113, 117-118.

In *People v. Jones,* we rejected the contention that the perverted conduct was involuntary and an incident of the defendant's homosexuality, and noted that what was punished was the deviate sexual assault, not the homosexuality. In rejecting the contention that homosexuality should excuse the crime of deviate sexual assault, or that addiction should excuse the crime of possession of narcotics, we stated at page 119:

> "It is evident from a review of the cases that courts have not embraced defendant's theory that involuntary anti-social acts in violation of a statute are the result of illness, and therefore are not punishable by virtue of the eighth amendment prohibition against cruel and unusual punishment. Quite the contrary, Justice Black, in his concurring opinion in *Powell v. Texas* (392 U.S. at 544), admonished against the deleterious effects on the criminal law of any such approach: 'If the original boundaries of *Robinson* are to be discarded, any new limits, too, would soon fall by the wayside, and the Court would be forced to hold the States powerless to punish any conduct that could be shown to result from a "compulsion," in the complex, psychological meaning of that term. The result, to choose just one illustration, would be to require recognition of "irresistible impulse" as a complete defense to any crime; this is probably contrary to present law in most American jurisdictions.' "

In *People v. Jackson (1968), 40 Ill.2d 143, 144,* we rejected the contention that the meaning of *Robinson* was that possession of narcotic drugs for self-administration by an addict was an involuntary and compulsive incident of the disease of addiction which cannot be punished.

The refusal of the court to order or secure the testimony of a medical expert as to addiction and its effects was not error. The facts of this case differ from

those in *People v. Watson (1966), 36 Ill.2d 228.* Here the pertinent issue was not lack of finances to obtain a medical expert witness, but rather was the circumstance that his testimony, whatever it might be, could not exonerate the defendant. *(People v. Jackson (1968), 40 Ill.2d 143, 144.)* Nor do we find error in the refusal of the court to give instructions based upon the defense of addiction. The jury was instructed that it must find that the possession and control of the narcotic drug "was a voluntary act" before they could find the defendant guilty; and the defendant failed to abstract all of the instructions and thus may not allege error in the giving or refusing of instructions. *People v. Donald (1963), 29 Ill.2d 283, 287; People v. Robinson (1963), 27 Ill.2d 289, 292.*

The defendant was sentenced to a term of not less that 5 nor more than 9 years under a statute permitting a sentence of from 5 years to life imprisonment. (Ill.Rev. Stat. 1967, ch. 38, par. 22—40.) He had previously been convicted of a violation of the narcotics law and was on parole when arrested. The sentence imposed was within the limits imposed by statute, was not at variance with the purpose and spirit of the law, and was not excessive. *(People v. Fox (1971), 48 Ill.2d 239, 251.)* Accordingly, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*