(No. 45329.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. WILLIAM DONALD BENEDIK, Appellant.

*Opinion filed January 31, 1974.*

Paul Bradley and Steven Clark, Illinois Defender Project, for appellant.

William J. Scott, Attorney General, of Springfield, and Jack Hoogasian, State's Attorney, of Waukegan (James B. Zagel and Charles H. Levad, Assistant Attorneys General, and Harry C. Bulkeley (Senior Law Student), of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

After a jury trial in the circuit court of Lake County the defendant, William Benedik, was found guilty of the murder of Karl Kresmery and Lynn Kelly. Upon recommendation of the jury, the trial judge imposed the death penalty. The defendant has appealed directly to this court. 50 Ill.2d R. 603.

For approximately seven years the defendant had been having an affair with Lynn Kelly. Shortly before the occurrence in question she had terminated the relationship and began dating Karl Kresmery. On the night of September 15, 1971, Miss Kelly and Kresmery were celebrating the latter's birthday at a tavern in Fox Lake, Illinois. Shortly after they entered the tavern, the defendant arrived. Witnesses testified that the defendant, Benedik, had been looking for Miss Kelly that evening and that she was attempting to avoid meeting him. The defendant did not speak to either Miss Kelly or Kresmery at the tavern. Miss Kelly and Kresmery left the tavern after midnight. The defendant left at about the same time. The body of Kresmery was discovered the next morning in a ravine adjacent to a desolate road in Fox Lake. The body of Miss Kelly was found on the same day in a wooded area of Marinette County, Wisconsin. Pathologists testified that both had died from knife wounds.

Later that day the defendant was arrested at his cabin in Michigan, not far from where Miss Kelly's body had been found in Wisconsin. Blood matching that of Miss Kelly's was found in the trunk of his automobile. Charred remains of insulation, rug matting and fiberboard from an automobile trunk were found in the remains of a fire near the defendant's cabin. Tire tracks found near Miss Kelly's body matched the tires on the defendant's car.

The defendant testified that he went to the tavern at about 1:00 o'clock on the morning of the 16th of September and left at about 1:15 shortly after Miss Kelly and Kresmery left. He said that he spoke to the pair outside of the tavern and they said they both wished to talk to him and asked him to follow them. He followed their car to a desolate road and, believing that they were lost, waited for them to turn around. After several minutes he got out of his car and approached the other vehicle. When he was several feet away, he heard Miss Kelly and Kresmery arguing and, to avoid becoming involved in the argument, he started to return to his car. He testified that he then heard Kresmery yell, "Come back here, you bastard." He turned around and saw Kresmery coming at him. Kresmery had an object in his right hand, and lunged at the defendant. During the ensuing struggle, the defendant claims that Kresmery was accidentally stabbed to death.

When the fight was over, Benedik said he approached the other car and found Miss Kelly slumped over in the front seat. He thought she was injured and decided to transfer her to his car and go for help. He then pulled Kresmery's body off the road and into a ravine so he could maneuver his car closer. As he attempted to transfer Miss Kelly's body into his vehicle, he realized that she, too, was dead. In his shock and confusion he put her body in his trunk and drove home. Later in the morning he drove toward his Michigan cabin. When his car became stuck on a side road in Wisconsin he removed her body from the

trunk and placed it where it was later found. He then went to his cabin where he was later arrested.

Kresmery's body, which was found about 150 feet off the road, had three stab wounds in the abdomen, one of which, according to the testimony of the pathologist, caused his death. He also had several wounds on his hands and one on his left elbow which were referred to by the pathologist as "defensive wounds."

The defendant contends that the circumstantial evidence against him did not prove him guilty beyond a reasonable doubt because it did not exclude every other reasonable hypothesis. It is his position that his testimony supported a reasonable hypothesis of innocence. This court has held that where a murder conviction is based solely on circumstantial evidence, the guilt of the accused must be so thoroughly established as to exclude every other reasonable hypothesis. (*People v. Lewellen, 43 Ill.2d 74; People v. Wilson, 401 Ill. 68.*) The fact that the defendant claims to have acted in self-defense and testified as to his version of the occurrence, however, is not sufficient to elevate his claim to the level of reasonable doubt when his testimony is viewed in the light of all of the other facts and circumstances of the case. The circumstantial evidence against the defendant was substantial. If the jury disbelieved his testimony, as they were entitled to do, they could reasonably have reached the conclusion that the physical evidence, the nature of the wounds on Kresmery's body, the defendant's attempt to hide the bodies and destroy other evidence, his flight and his apparent motive established his guilt beyond a reasonable doubt. It is not necessary that the jury disregard the inferences which naturally flow from this evidence, nor is the trier of fact "required to search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt." *People v. Russell, 17 Ill.2d 328, 331.*

In this case, obviously the jury did not believe the

defendant's story. It is within the province of the jury to judge the credibility of witnesses, weigh the testimony and determine matters of fact. The determination of the jury will not be disturbed unless the evidence is so unsatisfactory as to justify a reasonable doubt of guilt. *People v. Zuniga, 53 Ill.2d 550; People v. Hairston, 46 Ill.2d 348.*

The defendant also contends that his conviction should be reversed because the trial judge improperly admitted evidence that he had physically assaulted Miss Kelly on previous occasions. The State argues that this evidence was properly admitted in rebuttal of the defendant's testimony that he was in love with Miss Kelly and had never struck her. The defendant argues that these events, which occurred more than four years before the killings, had no probative value, were irrelevant and unfairly prejudiced the jury. We believe that this evidence was properly admitted as impeaching the defendant's statement that he had never struck Miss Kelly and as showing that the relationship between the defendant and Miss Kelly was tempestuous and not the sublime love affair which defendant's testimony had portrayed. *People v. Wilson, 400 Ill. 603,* in which evidence of marital disputes four years prior to the incident involved was held improperly admitted, is not inconsistent with this decision. In *Wilson* the evidence was introduced by the prosecution during its case in chief to support its theory that the husband was responsible for a later attack on his wife. In this case the evidence was introduced by the State in rebuttal rather than during its case in chief and was admitted to rebut the defendant's testimony and for impeachment purposes rather than to prove guilt.

The defendant next contends that the prosecutor made improper remarks during his closing arguments. The objectionable remark was: "I only want to leave you with this, if this is a crime of violence, if a week from today or a month from today you may be seated at your breakfast table and you may be reading the newspapers and you may

be saying to yourself, what, shaking your head in the negative, why isn't something being done about the violence in society today?" An objection to this remark was sustained in part, but the court did not specify which part of the remark was objectionable. The defendant contends that this statement appealed to the jury's general fear of violence and was intended to bridge doubts about the defendant's guilt. We do not view these remarks as prejudicial. Clearly these were crimes of violence and it was proper for the prosecution to refer to them as such. This court stated in *People v. Durso, 40 Ill.2d 242, 253:* "In any event, it is always proper to argue the evil results of crime, urge the fearless administration of the law and denounce the accused's wickedness if such comments are based upon the facts in the record or may be fairly inferred therefrom."

The defendant argues that the prosecutor improperly attempted to define reasonable doubt for the jury when he stated in his closing argument, "Your doubt must be a reasonable one, in other words, in this complex society of today we have doubts about all things."

We do not view this simple statement as an attempt to define reasonable doubt. Rather we view it as a legitimate response to the statements defense counsel made in his closing argument. Defense counsel had strongly emphasized the element of reasonable doubt. In fact, in one portion of his closing argument he mentioned reasonable doubt five times within one and one half pages of the transcript of his argument.

With this in mind when we read the above statement of the prosecutor of which the defendant complains in the context in which it was used, it appears as a reply invited by the defendant's argument. The prosecutor's reply, including the statement complained of, is: "Counsel also mentioned that it is your duty to find the defendant innocent unless you were convinced beyond a reasonable doubt that he is guilty. He underlined reasonable doubt.

I'll take it out again. Your doubt must be a reasonable one, in other words, in this complex society of today we have doubts about all things. *** I will simply stress, I, too, emphasize that you must, the doubt must be a reasonable one, reasonable one if you have a doubt."

The decisions of the United States Supreme Court in *Furman v. Georgia, 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726,* and *Moore v. Illinois, 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562,* prohibit the imposition of the death penalty under the statute in effect at the time of the imposition of sentence in this case. In view of these decisions the judgment of conviction is affirmed, the sentence of death is vacated, and the cause is remanded to the trial court for the imposition of a sentence other than death in accordance with the provisions of the Unified Code of Corrections. Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—5—3(c).

*Affirmed and remanded, with directions.*