THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS INMAN, Defendant-Appellant.

Fifth District   No. 75-277

Opinion filed June 4, 1976.

G. J. MORAN, J., dissenting.

Ralph Ruebner and J. Daniel Stewart, both of State Appellate Defender's Office, of Elgin, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Bruce D. Irish and Rolf F. Ehrmann, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Defendant, Thomas Inman, appeals from a judgment of the circuit court of Madison County entered upon a jury verdict finding him guilty of unlawful possession of 5.7 grams of a substance containing heroin and from a sentence of 2 to 6 years imposed thereon. Defendant presents two issues for review: (1) whether he was proven guilty beyond a reasonable doubt; and (2) whether the closing argument of the prosecutor deprived the defendant of his right to a fair trial.

The defendant and a co-defendant were indicted for the offense of unlawful possession of a controlled substance. The defendant entered a plea of guilty to the instant charge, but later was allowed to withdraw his plea.

During the trial the State called four witnesses, the first of whom to testify was Deputy Sheriff Gary Burns. Deputy Burns stated that on November 22, 1973, he obtained and executed a search warrant for an apartment in a building located at 2124 Delmar Avenue in Granite City. Accompanying him were Detective Glen Neuman, and six other police officers. At about 10:30 a.m. on the day in question, Detective Neuman knocked on the door of the apartment named in the search warrant. The defendant answered the door, which had a chain lock on it. According to Deputy Burns, Detective Neuman said "We're police officers, we've got a search warrant, let us in." When the door started to slam shut, Detective Neuman forced the door back open.

Deputy Burns testified that after all of the police officers entered the apartment the defendant exclaimed, "What are you doing breaking down my door?" According to Deputy Burns, Detective Neuman answered, "We have got a search warrant to search this apartment. Do you live here?" and defendant responded, "Yes." According to Detective Neuman, when the defendant answered the door, he said, "What the hell are you pigs doing in my house?" and Neuman responded, "Is this your house?" Defendant answered "Yes."

During the search the defendant, who was wearing only his undershorts, requested permission to put on his jacket. The officers allowed him to get the item. Instead of putting it on, however, he wrapped it around both his arms and dove through the closed glass kitchen window. As he dove, Deputy Randy Lamp grabbed him by the back of his pants, tried to pull him back, but lost his grip. Defendant jumped down to the first story roof. Two other officers apprehended defendant and brought him back upstairs.

Besides the defendant the police found Patricia Brule in the apartment. She was undressed and in bed.

During the search of the apartment, the police officers found several

needles, syringes, narcotics paraphernalia, a large amount of money, a pistol, and some white powder in tin foil packets that was tested and proven to be heroin. The heroin was discovered in a small, wooden lady's jewelry box underneath the bed in which defendant and his girlfriend had been sleeping. The officers also found both men's and women's clothing in the closets. When the defendant was taken away from the apartment, he put on a pair of pants, a shirt and a jacket that had been in the apartment.

During closing argument the State's Attorney argued that the defendant knowingly possessed heroin because "there was every indication that he lived with her in that apartment." Defense counsel objected. The court stated, "This is final argument. Overruled." The prosecution stated, "It is a fair inference, a reasonable inference that they were the same as man and wife in any household." Defense counsel noted for the record his continuing objection to the argument.

Defense counsel in closing argument asserted that defendant was not guilty even if he knew Patricia Brule had heroin in the apartment because there was no evidence that defendant actually lived there. In rebuttal, the State's Attorney argued that defendant and his girlfriend were living together and that the defendant "can't escape accountability for this offense by pointing to her." The State's Attorney continued:

"[Defense counsel] in his opening stated * * * his evidence would show she was arrested and gave that address and that [defendant] did not. There is no evidence of that. And no evidence that if she did testify it could help him, because it could not. They were in this together and her testimony if she would give it would condemn him as well as herself."

Defense counsel then objected to "what her testimony would be," and the court overruled the objection.

Following a sentencing hearing, the court sentenced the defendant to 2 to 6 years, the sentence to run concurrently with a 3- to 9-year sentence defendant had received after pleading guilty to another charge of possession of heroin. Defendant's post-trial motion was denied.

The first issue the defendant presents is whether the State failed to prove beyond a reasonable doubt the defendant guilty of unlawful possession of heroin. The defendant contends that the State failed to establish a sufficient connection between the controlled substance, the apartment in which it was found, and the defendant, to support the allegation that the defendant knowingly possessed the controlled substance.

■■ The general rule concerning possession and control of narcotics is well stated in *People v. Galloway* (1963), 28 Ill. 2d 355, 358, 192 N.E.2d 370, 372, *cert. denied*, 376 U.S. 910, 11 L. Ed. 2d 608, 84 S. Ct. 665:

"To support a conviction of the crime of unlawful possession of

narcotic drugs the People must prove not only that the accused had knowledge of the presence of the narcotics, but also that they were in his immediate possession and control. (*People v. Smith*, 20 Ill. 2d 345; *People v. Matthews*, 18 Ill. 2d 164.) At the same time, however, we have adopted the view that actual physical possession is not required to be proved, it being sufficient if constructive possession is established, and further, because the element of knowledge is seldom susceptible of direct proof, have held that knowledge may be proved by evidence of acts, declarations or conduct of the accused from which it may be fairly inferred that he knew of the existence of the narcotics at the place where they were found. (*People v. Embry*, 20 Ill. 2d 331; *People v. Mack*, 12 Ill. 2d 151.) In particular, in cases such as we have here, it is our view that 'where narcotics are found on the premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the mind of the jury * * * a reasonable doubt as to his guilt.' (*People v. Nettles*, 23 Ill. 2d 306, 308-309.) Whether there is possession and whether there is knowledge are both questions of fact to be determined by the jury, or by the court where a jury is waived, and, as in the case of other factual determinations committed to a jury in criminal proceedings, its findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. *People v. Mack*, 12 Ill. 2d 151."

There was sufficient testimony at trial for the trier of fact to find that the apartment was in the control of the defendant. The defendant was undressed when the officers arrived. He answered the door, and upon seeing the officers, attempted to slam the door shut. When the officers forcibly entered the premises, according to Deputy Burns the following exchange took place between the defendant, Inman, and Detective Neuman:

INMAN: "What are you doing breaking down my door?"

DETECTIVE NEUMAN: "We have got a search warrant to search this apartment. Do you live here?"

INMAN: "Yes."

Detective Neuman recalled the exchange in slightly different terms, as follows:

INMAN: "What the hell are you pigs doing in my house?"

DETECTIVE NEUMAN: "Is this your house?"

INMAN: "Yes."

Neither officer reported this exchange in his report of the search and arrest.

After the officers entered the apartment, the defendant, who was wearing only his undershorts, stated he was cold, and asked to put on his jacket. Defendant, instead of putting on the jacket, put it over his head and arms, and jumped through a closed kitchen window. He then jumped to the ground where he was apprehended by police. There were men's clothing garments in the closet in the apartment. The defendant dressed himself from those garments when he was arrested by the police. The uncontradicted evidence shows an admission by the defendant that it was his apartment; the admission was corroborated by the other items already discussed.

The discrepancies between the testimony of the officers as to the statements of the defendant, and their police reports were fully explored at trial. Credibility is a question for the jury with its superior opportunity to observe and weigh the testimony and evidence before it. *People v. McCoy* (1971), 133 Ill. App. 2d 416, 273 N.E.2d 430.

The case before us is distinguishable from *People v. Pugh* (1967), 36 Ill. 2d 435, 223 N.E.2d 115. In that case the defendant was found in a bed in an apartment with only shorts and a tee shirt on. There was testimony by the police that the defendant admitted living in the apartment for two months. At trial the defendant denied the statement, and testified that he was living at his parents' home at the time of arrest. There was evidence that the apartment was rented by someone else. *People v. Pugh* differs from the case before us in that here the defendant did not contradict the evidence of possession and control.

It is true that the court in *People v. Pugh* stated at pages 437-38:

"It would seem the People could have produced some evidence that the defendant paid the rent or that he was in the apartment frequently if such were the case."

We do not find that proof of those items are intended by the Supreme Court to be the only test of whether possession and control of a dwelling place has been shown. Rather, they are several factors among many which tend to prove or disprove possession and control. In the case before us, possession and control of the apartment by the defendant has been shown. Where narcotics are found on the premises under the control of the defendant, this fact in and of itself gives rise to an inference of knowledge and possession which may be sufficient to sustain a conviction, absent other facts and circumstances which might leave a reasonable doubt of guilt in the mind of the jury. *People v. Bell* (1972), 53 Ill. 2d 122, 290 N.E.2d 214; *People v. Galloway* (1963), 28 Ill. 2d 355, 102 N.E.2d 370; *People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361; *People v. Embry* (1960), 20 Ill. 2d 331, 169 N.E.2d 767.

■■ In asserting his lack of guilt, defendant also points to both the presence of another person, Patricia Brule, and the fact that the heroin was found in a woman's jewelry box. It has been held that the presence of other persons does not preclude a finding by the jury of an inference of knowledge and possession of narcotics by a defendant alone. *People v. Bell*, at 217. In *People v. Embry* (1960), 20 Ill. 2d 331, 335, 169 N.E.2d 767, 769, the court stated:

> "[E]ven if it be assumed that the evidence showed that defendant's wife had possession of the drugs, this does not preclude a finding that defendant was also in possession of the drugs."

The court, in *Embry*, recognized that possession of narcotics may be joint.

The defendant next makes two contentions regarding the closing arguments. First, he contends that he was deprived of his right to a fair trial because of a statement made by the trial court that purportedly implied his personal opinion of the defendant's guilt. The People's supplement to the record shows that the statement at issue was made by the State's Attorney. As such, it was a proper statement in closing.

The defendant also contends that in his rebuttal argument, the prosecutor improperly argued that a witness was not called by the defense because she would have testified adversely to the defendant. The State answers that consideration of this issue should be deemed waived on appeal for reason of failure to make a specific objection on this ground and for failure to specify this ground in the post-trial motion.

Our review of the record discloses that the defense counsel objected to the argument in question stating, "Objection to what her testimony would be." The objection was overruled. The ground for the objection asserted on appeal by the defendant was not mentioned at trial or in the post-trial motion. Accordingly, we would be inclined to deem this point waived. (*People v. Curry* (1974), 56 Ill. 2d 162, 306 N.E.2d 292, 296; *People v. Irwin* (1965), 32 Ill. 2d 441, 207 N.E.2d 76, 78.) Nonetheless, we consider the merits of the defendant's contention.

■■ Defense counsel in his closing argument suggested that the evidence could just as easily have been used to prove the guilt of Patricia Brule as that of the defendant. The prosecutor's reply was that defendant cannot escape accountability for the offense by pointing to Ms. Brule. The prosecutor's comments in rebuttal were thus nothing more than a legitimate response to defense counsel's closing argument. (*People v. Benedik* (1974), 56 Ill. 2d 306, 307 N.E.2d 382; *People v. Zuniga* (1973), 53 Ill. 2d 550, 293 N.E.2d 595; *People v. Embry*.) Likewise, we consider that the prosecutor's additional comment—"There is * * * no evidence that if Pat Brule did testify it could help him, because it could not. They were in this together and her testimony, if she would give it would condemn him

as well as herself"—was proper response to defense counsel's argument. Having opened the door to this line of argument, defendant cannot complain that this response by the prosecutor prejudiced him before the jury. The stipulated evidence before the jury established that the reason defendant had not called Patricia Brule as a witness was defendant's inability to locate her.

For all of the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Judgment affirmed.

JONES, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

I think that the evidence presented fails to support beyond a reasonable doubt the conclusion that the apartment was under the defendant's control.

The State contends and the majority agrees that where narcotics are found on the premises under the control of the defendant, this fact in and of itself gives rise to an inference of knowledge and possession which may be sufficient to sustain a conviction, absent exculpating evidence. It is true such an inference can be made (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361), but only when the premises are shown to be under the control of the defendant.

The evidence introduced to show defendant's control over the apartment consisted of an admission allegedly made by the defendant but not contained in the police report, and men's clothing found in the apartment. I do not believe the evidence shows beyond a reasonable doubt the defendant had control of the apartment or knowledge of the narcotics.

Several unanswered questions corroborate my belief. The State failed to introduce any evidence as to who paid rent at the apartment. If evidence was introduced that indicated the defendant paid rent at the apartment, *People v. Embry* (1960), 20 Ill. 2d 331, 169 N.E.2d 767, would be controlling; absent evidence as to who paid the rent, *Embry* is not conclusive as to the facts in this case.

The State contended that the defendant and Ms. Brule were living together apparently based on the finding of certain men's and women's clothing in the apartment. The fact that defendant was at the apartment and some of his clothing was found there does not sufficiently prove the defendant was living with Ms. Brule. No personal items belonging to the defendant were discovered at the apartment; only women's underthings

were found. It is logical that if the defendant was, in fact, living at the apartment, more of his personal belongings would have been discovered.

The record shows that the arresting officers were unsure of who lived in the apartment. The search warrant obtained by the police did not include either the name of the defendant or Ms. Brule, and money seized at the apartment was returned to Ms. Brule, only, and not the defendant. The logical inference is that the police believed only Ms. Brule lived in the apartment. This belief is further demonstrated by the fact that the police initially charged only Ms. Brule with possession of narcotics.

In my opinion, *People v. Pugh* (1967), 36 Ill. 2d 435, 223 N.E.2d 115, is applicable to this case. In *Pugh* the Supreme Court reversed a conviction for possession of narcotics because the State had not shown beyond a reasonable doubt that the defendant was in control of the premises where narcotics were found.

The facts in *Pugh* are very similar to this case. In *Pugh*, as in this case, no evidence was introduced to show the defendant paid rent at the apartment. In both cases the defendant was undressed at the time of arrest and put on clothing that was in the apartment, and in both cases other men's clothing was found in the apartment. The defendant in *Pugh* and the defendant in this case, allegedly admitted to living in the apartments; however, in both cases the admissions were not contained in the police reports. In both cases there was evidence that someone other than the defendants lived in the apartments.

The majority attempts to distinguish *People v. Pugh* by pointing out that in the *Pugh* case the defendant took the stand and denied living in the apartment, whereas in this case the defendant did not testify. I do not think this adequately distinguishes *Pugh* so as to make its holding inapplicable. The State's burden of proving beyond a reasonable doubt that the defendant was in control of the apartment does not change when a defendant chooses not to take the stand. Therefore, I do not believe the evidence presented supports, beyond a reasonable doubt, the conclusion that the apartment was under the defendant's control.