THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE HESTER *et al.*, Defendants-Appellants.

Third District   No. 79-326

Opinion filed August 12, 1980.

John H. Reid and John W. McGuire, both of State Appellate Defender's Office, of Mt. Vernon, for appellants.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin, Martin N. Ashley, and Gillum Ferguson, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

The defendants, Willie Hester and Susan Perry, appeal from their convictions, after a bench trial, for unlawful possession of less than 30 grams of heroin and for unlawful possession of a hypodermic syringe. Willie Hester was sentenced to a term of two years in prison, while Susan Perry was given a sentence of probation for a term of 30 months. On this appeal, both defendants argue (1) that there was insufficient evidence presented to prove them guilty beyond a reasonable doubt and (2) that they were denied a fair trial by the admission at trial of certain hearsay evidence.

The record indicates that during the afternoon of August 22, 1978, an officer of the Joliet police force, David Gerdes, knocked on the front door of the lower apartment at 219 Sherman Street in Joliet. Defendant Willie Hester answered the door, letting Gerdes (whom he had known for some three years) into the living room of the apartment. Susan Perry was sitting on a couch in the living room. There was no one else present in the apartment, and the defendants were shoeless. Gerdes testified at trial that Hester and Perry's relationship was that of husband and wife, at common law. Officer Gerdes was present that afternoon in the apartment as part of arrangements with the Metropolitan Area Narcotics Squad, which agency had obtained a warrant to search the apartment for drugs. Gerdes was to give the drug squad officers a signal by radio when he knew the defendants were present. As the three were sitting in the living room, Willie Hester informed Gerdes that he had been staying at the apartment for several weeks and that his brother, who had lived there before, had moved to a different section of Joliet.

Shortly thereafter, agents of the drug squad approached, knocked, announced their purpose and entered the apartment. During their search they examined a brown leather pouch which lay on top of an end table near the front door in the living room. Inside the pouch the agents found 29 foil packets which later were determined to contain heroin. They also found a hypodermic syringe wrapped in plastic in the bathroom medicine

cabinet. The police found two envelopes in the apartment, which envelopes were addressed to Willie Hester and Susan Perry at 219 Sherman, Joliet, Illinois. One of the agents testified at trial that in the search of the apartment he found both men's and women's clothing in the closet. The defendants were placed under arrest. After leaving the apartment, the police locked the door with a key obtained from Susan Perry. The key was returned to Perry after the apartment was locked. While at the police station for processing, both Perry and Hester gave their address as 219 Sherman, Joliet.

The above factual presentation was made by the State in its case in chief. The letters were admitted over the "hearsay" objection of the defendants. The court, in admitting the letters, specifically noted that they were being admitted, not to prove the truth of the matters stated by the addressors, but rather to indicate that the defendants were receiving mail at the address and exerting control over such mail at that address. The court recognized the addressors' statements as impermissible hearsay, but focused its attention, and limited the admissibility, to the actions of the defendants in accepting and exercising control over the mail at the address. The only presentation by the defense was by stipulation indicating that, had the landlord of the apartment testified, he would have stated that he rented the apartment more than a year previously to Robert Hester, the defendant's brother. The landlord would also have testified that he did not know who actually resided there, but that he had seen the defendants there.

Based upon the evidence presented, the court found the defendants guilty of possession of less than 30 grams of heroin and possession of a hypodermic syringe. In so finding, the court concluded that the State had proven constructive possession of the drugs and the syringe by defendants.

The defense argues, as its first issue, that there was insufficient evidence to convict the defendants of the offenses charged. It is argued that the evidence, at most, established that the defendants were temporarily staying at the apartment, but that there was no showing that either defendant had possession of the contraband.

■■ In order to sustain a conviction for possession of contraband such as is involved in this case, the State must show (1) that the defendants had knowledge of the presence of the drugs and (2) that they had immediate and exclusive control of the premises in which the contraband was found. (See *People v. Heerwagen* (1975), 30 Ill. App. 3d 144, 332 N.E.2d 136.) Because of the difficulty of proving knowledge of the presence of drugs, however, proof of control alone is sufficient to give rise to an inference of knowledge and possession. Such an inference "may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and

circumstances which might leave in the mind of * * * the court * * * a reasonable doubt as to his [defendant's] guilt." (*People v. Nettles* (1962), 23 Ill. 2d 306, 309, 178 N.E.2d 361; *People v. Inman* (1976), 38 Ill. App. 3d 752, 348 N.E.2d 510.) Thus a showing of control over the premises, in some cases, may be sufficient evidence to sustain a conviction for possession of contraband. The rationale behind the inference set forth in *Nettles* was explained there:

> "[W]here narcotics are found on premises under defendant's control, it may be inferred that the defendant had both knowledge and control of the narcotics. This inference is based largely upon the nature of the commodity and the manner in which its illegal traffic is conducted. By law the use of narcotics, except for specified medicinal purposes, is rigidly condemned. Because of this illegitimate nature of narcotics, they are sold for exorbitant sums on the black market and are therefore of great value to the person possessing them. Furthermore, since their mere possession may subject such person to severe criminal consequences, the narcotics traffic is conducted with the utmost secrecy and care. Human experience teaches that narcotics are rarely, if ever, found unaccountably in a person's living quarters." *People v. Nettles* (1962), 23 Ill. 2d 306, 308, 178 N.E.2d 361.

In the present case, the evidence was fully sufficient to establish the defendants' immediate and exclusive control over the premises. Both defendants were present in the apartment when the officers arrived. Both were dressed as if staying there and not visiting for the moment. There were both men's and women's clothing in the closet. Defendant Hester admitted to living in the apartment and defendant Perry had a key to the apartment, which was used by police to lock the door and then returned to her. Both defendants received mail at the apartment and, most damaging to their cases, both defendants gave the Sherman Street address as their residence when they were booked at the stationhouse. The defense, at trial, was unable to bring forth any other facts and circumstances which cast doubt on the control over the premises exerted by these two defendants. While the original lessee was apparently the defendant Hester's brother, the landlord's testimony indicated that he had seen these defendants at the premises. Also, Hester himself, in talking with Officer Gerdes, indicated that his brother had moved out and was living elsewhere at that time. The evidence, viewed in its entirety, was fully sufficient to establish the defendants' guilt of possession of the contraband.

We find unpersuasive the defense reliance upon *People v. Wolski* (1975), 27 Ill. App. 3d 526, 327 N.E.2d 308. In *Wolski*, where the court found the evidence insufficient to support a conviction for possession of

marijuana, there were other facts and circumstances present casting doubt on the defendant's guilt. The evidence there indicated that the defendant shared control over the premises with his mother and brother. It was also established that the defendant was not present when the drugs were found, nor had he visited the premises for three days prior to the search which turned up the drugs. There was also evidence that many other persons had access to the apartment. The court found that the lack of corroborating evidence, coupled with the facts and circumstances about the defendant's absence and others' access, left doubt as to the defendant's guilt. (27 Ill. App. 3d 526, 529.) We do not read *Wolski*, as the defense suggests, to alter the rule announced in *Nettles*, by always requiring some corroborative evidence associating the defendant with the contraband in order to support conviction. We adhere to conclusion in *Nettles* that the bare fact that contraband is found in an apartment or dwelling under the control of a defendant is, in and of itself, sufficient to give rise to an inference of knowledge and possession. This inference is sufficient to sustain a conviction absent other facts and circumstances casting doubt on the guilt of the defendant. We find *Wolski* to be a case where other facts and circumstances were presented which did give rise to doubt. As already noted, no similar facts and circumstances were presented in the instant case.

■█ ■ The defendants next argue that they were denied a fair trial when the envelopes, addressed to them at the Sherman Street address, were admitted into evidence by the court. It is argued that the envelopes were inadmissible hearsay and ought not to have been admitted. Certainly, they would have been inadmissible hearsay had they been admitted to prove the truth of the defendants' residence as stated by the addressors of the envelopes. However, the court specifically limited their use, and stated that it was not admitting them to prove the truth of tenancy by defendants. The court admitted the letters as evidence relevant to the question of the defendants' presence at and control over the apartment to which the letters were addressed. The court emphasized the limited purpose for which it allowed them into evidence.

> "[T]he fact being offered to the Court is that they are receiving mail there. And you can infer that from the fact that here are a series of opened letters and they are receiving mail there, the receipt of the mail there, I think part of it is that the true address is on there except for that proof. I don't see it is the same as somebody saying I delivered something there * * *. I think we are more interested in the act of the parties in opening this mail and exerting the control over this mail by having opened mail there. If it was not theirs, they shouldn't have opened it.
> We are more interested in what they are saying to the Court rather

than what somebody has addressed. The person put the address on, he is not in Court. It is hearsay. He put down Mr. and Mrs. Hester at 219 Sherman Street and the returned sender is Mr. Brown. Well. Brown is making an assertion, but he [the State's Attorney] is not asking me to receive Brown's assertion. He is asking me to receive the fact that these people have opened that mail and had it at—had no business opening it if it wasn't theirs, and they are exerting control over that mail opening it and so forth.

And it is being addressed there, that is true. The address is there." The court made it clear that it was admitting the letters for a limited, non-hearsay purpose, and it is to be presumed that is how they were considered by the court in reaching its determination. (*People v. Stamm* (1979), 68 Ill. App. 3d 177, 385 N.E.2d 839.) We would also note, alternatively, that even were the letters improperly considered, their receipt into the record would have been harmless, given their cumulative nature on the question of residence and the fact that both defendants made uncontradicted admissions that they resided at 219 Sherman Street. As such, reversal on the basis of the limited admission of the letters would not be warranted. *People v. Torres* (1974), 18 Ill. App. 3d 921, 310 N.E.2d 780.

For the reasons stated, the judgment of the Circuit Court of Will County is affirmed as to both defendants.

Affirmed.

STENGEL and STOUDER, JJ., concur.