THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN A. SONGER, Defendant-Appellant.

Third District   No. 3—90—0301

Opinion filed June 5, 1992.

Carey J. Luckman, of Pontiac, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

John A. Songer was convicted by a jury of unlawful possession with intent to deliver more than 30 grams but not more than 500

grams of cannabis (Ill. Rev. Stat. 1989, ch. 56½, par. 705(d)) and unlawful possession of less than 15 grams of a controlled substance (LSD) (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(b)). He was sentenced to eight years' imprisonment on the cannabis conviction. The trial court reserved sentencing on the LSD conviction. Songer appeals his conviction of unlawful possession of cannabis. We affirm.

At approximately 8:20 p.m. on October 24, 1988, two agents with the Peoria Metropolitan Enforcement Group (MEG) and two Peoria County sheriff's deputies arrived at 1708 West Lane in Peoria County to execute a search warrant. A third agent arrived after the search commenced. The record indicates the residence was described as a basement house. The above-ground portion consisted only of a bedroom, a foyer closet, and a hallway. The basement level contained a kitchen, a living room, and a bathroom.

MEG Agent Dan Brotz testified that after knocking on the door of the residence, he saw Songer's roommate, Brian Tipton, come to the door and then retreat about six feet. Brotz testified that he waited approximately 45 seconds to a minute before striking the door open with a sledgehammer. Brotz was not asked whether the police identified themselves as police officers prior to the forced entry. Upon entering, Brotz found Tipton standing in the doorway of the upstairs bedroom, approximately six feet from the front door. Brotz was dressed in civilian clothes. However, he was wearing a black "raid" jacket with "police" clearly printed on the front and back. Brotz also had his revolver drawn. The other MEG agent present also wore civilian clothes and a "raid" jacket just like Brotz's. The two sheriff's deputies were wearing sheriff's uniforms.

The officers searched the upper-level closet and found $1,876 cash in a brown plastic bag and $7,100 cash in a paper bag. Two plastic bags of cannabis were found in a paper bag on the closet floor. A box on the closet floor contained drug paraphernalia and purported price lists. In a gym bag in the closet the officers found two bags of cannabis, an item of drug paraphernalia described as a "one hitter," small squares of paper which tested positive for LSD, and approximately $50 in coins. A search of the kitchen yielded an electronic scale and 11 plastic bags of cannabis.

Danny Richards, deputy director of MEG, testified that the search was already in progress when he arrived at the house. Upon arrival, he found Songer and Tipton seated at a table in the kitchen in the basement level. No other testimony was offered to explain where Songer was located when the raid started or how he came to be seated in the kitchen. Songer admitted to Agent Richards that he

lived in the residence. Tipton stated that he lived there occasionally. Songer had $455 cash in his pants pocket. Tipton had two bags of cannabis and $867 cash in his pants pocket.

Agent Richards was offered as an expert in the field of packaging, delivery, sales and valuation of drugs. Richards testified that in his expert opinion the nearly half pound of cannabis found on the premises, packaged in bags of varying quantities, "would be for redistribution." He stated that the amount of cannabis in the house clearly exceeded the amount normally used for personal consumption.

Songer contends his conviction should be reversed because (1) the evidence was insufficient for the jury to find him guilty beyond a reasonable doubt of possession of cannabis with intent to deliver; (2) hearsay testimony was improperly admitted at trial; (3) expert testimony allowed at trial was plain error; and (4) the unannounced entry by the officers executing the search warrant was not constitutionally reasonable.

A court in reviewing the sufficiency of the evidence must view all the evidence in the light most favorable to the prosecution in order to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.

Songer is correct that no testimony was offered to place him at the residence when the police arrived to execute the search warrant. Agent Brotz stated that it was Songer's roommate, Tipton, who answered the door. Agent Richards testified that he saw Songer seated at the kitchen table while the search was being conducted. Therefore, Songer concludes that the elements necessary to prove unlawful possession were lacking since there was no testimony placing him in the house at the time of the forced entry by the police.

Songer additionally argues that the locations in the house where the contraband and other items were found did not lend themselves to an inference of knowledge on his part. Songer also points out that no contraband was found on his person, in his car, or in the bedroom. The record is unclear whether Songer or his roommate claimed possession of the bedroom. Songer contrasts all of this evidence with the conduct of Tipton, who responded to the knock at the door and was found with two bags of cannabis and $867 in his trouser pockets.

To support a conviction for unlawful possession of a controlled substance, the State must prove that the defendant had knowledge of the presence of drugs and that they were in his immediate posses-

sion and control. (*People v. Galloway* (1963), 28 Ill. 2d 355, 358, 192 N.E.2d 370, 372.) Possession may be established by evidence of either actual or constructive possession. (*People v. Mack* (1957), 12 Ill. 2d 151, 161-63, 145 N.E.2d 609, 612-13; *People v. Scott* (1987), 152 Ill. App. 3d 868, 871, 505 N.E.2d 42, 44.) Constructive possession may be inferred from the defendant's exclusive control of the premises where the drugs were found. (*People v. Hester* (1980), 87 Ill. App. 3d 50, 52-53, 409 N.E.2d 106, 108-09.) Once possession is proved, knowledge may be inferred from the surrounding facts and circumstances. (*People v. Jackson* (1961), 23 Ill. 2d 360, 365, 178 N.E.2d 320, 322.) Whether Songer had knowledge of the drugs and possession of them were questions of fact to be determined by the jury, and its findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt. *People v. Gallagher* (1990), 193 Ill. App. 3d 566, 569, 550 N.E.2d 255, 257.

■ Based upon our review of the record, we find there is sufficient evidence to establish Songer's immediate and exclusive control over the premises. Songer admitted that he lived at the premises in question. Tipton told Agent Brotz that he stayed there occasionally. The officers found cannabis in various locations throughout Songer's residence. The presence of Songer's roommate, Tipton, does not change the result. The requirement that possession must be exclusive does not preclude a finding of joint possession. (*People v. Burke* (1985), 136 Ill. App. 3d 593, 599, 483 N.E.2d 674, 679.) Songer's unexplained absence when the officers arrived at his residence is irrelevant to the issue of possession. Songer was in actual control of the premises and lived there full time while Tipton admitted that he was only an occasional visitor.

■ We disagree with Songer's assertion that proof was lacking of his possession of cannabis with intent to deliver. An individual's possession with intent to deliver is not always subject to direct proof. A reasonable inference of intent to deliver is permitted when the amount of drugs possessed could not reasonably be used for personal consumption. (*People v. Marshall* (1988), 165 Ill. App. 3d 968, 976, 521 N.E.2d 538, 543.) Other factors which may support or enhance the inference of intent to deliver include the manner in which the drugs were kept, the discovery of a large amount of cash, and the presence of paraphernalia used in the sale of drugs, including a scale. (*People v. Schaefer* (1985), 133 Ill. App. 3d 697, 703, 479 N.E.2d 428, 432-33; *People v. Friend* (1988), 177 Ill. App. 3d 1002,

1021, 533 N.E.2d 409, 421.) We find all of these factors to be present here.

■ The police found cannabis packaged in a number of bags of varying quantities throughout Songer's home. Agent Richards testified as an expert that the amount of cannabis discovered exceeded the amount expected to be used for personal consumption and was packaged in a manner that would suggest it was for redistribution. Richards also testified that he would not expect a cannabis user to possess a scale, a price list, nearly $10,000 in currency, and books on marijuana-growing techniques. Our review of the record clearly indicates that sufficient evidence was presented to support the inference that Songer intended to deliver the cannabis in his possession.

Songer next contends that he was denied a fair trial by the admission of hearsay evidence. During the search, officers found a gym bag on the floor of the foyer closet. The contents included prescription drug bottles, a letter addressed to John Sanders, and a car title issued to John Songer at 1708 West Lane. The contents were admitted into evidence over Songer's hearsay objections.

■ The State maintains the documents were offered and admitted *not* to prove the truth of the matters stated by the pharmacist, the addressor, or the Secretary of State, but to indicate that the person whose name appeared on the items possessed the contraband found in the bag and foyer closet. We agree. The items were admissible simply as being relevant to the issue of Songer's presence at and control over the residence. See *Hester*, 87 Ill. App. 3d at 54-55, 409 N.E.2d at 109-10.

Even if the documents were improperly admitted, we do not consider the error so prejudicial as to require a new trial. The documents were admitted into evidence solely for the purpose of linking Songer to the residence and were merely cumulative evidence since Songer had already admitted to Agent Richards that he lived there. Songer's admission alone placed him in constructive possession of the contraband found in the kitchen and the foyer closet. Reversal for improperly admitted hearsay evidence is not warranted where properly admitted evidence proves the same matter. *Hester*, 87 Ill. App. 3d at 55, 409 N.E.2d at 110.

■ Songer also questions the admissibility of Agent Richards' testimony as an expert witness. Specifically, Songer argues he was prejudiced by Richards' testimony that the cannabis seized was packaged for redistribution. Songer claims that it was error for an agent present during the execution of the search warrant to then testify as an expert for the State. We disagree. Agent Richards was properly

tendered, without *any* objection, as an expert in packaging, delivery, sales, and valuation of drugs. In addition, because Songer failed to preserve this issue for review, it can only be considered under the plain error doctrine. This doctrine requires that the evidence be closely balanced or that the error is of such gravity that it denies the defendant a fair trial. (*People v. Walker* (1985), 109 Ill. 2d 484, 504, 488 N.E.2d 529, 537-38.) We do not find the evidence to be closely balanced nor do we find any error in the trial court's ruling which allowed Richards to testify as an expert witness. As we discussed earlier, the inference of Songer's intent to deliver could be properly drawn from the quantity of cannabis found, the presence of a scale and the large amount of cash.

Songer next argues that the unannounced entry by the officers was constitutionally unreasonable under the circumstances. Songer filed a motion to suppress the items seized during the execution of the search warrant. The trial court denied the motion.

The Illinois Supreme Court has recently discussed the knock-and-announce rule in *People v. Condon* (1992), 148 Ill. 2d 96.

> "Although the failure of law enforcement officers to knock and announce is not a *per se* constitutional violation, the presence or absence of such an announcement is an important consideration in determining whether a subsequent entry to arrest or search is constitutionally reasonable. [Citations.] *** Officers may be excused from the knock-and-announce requirement if exigent circumstances exist sufficient to justify the intrusion. [Citation.] *** Exigent circumstances may encompass such considerations as danger to the police officers executing the warrant, or the uselessness of the announcement, or the ease with which the evidence may be destroyed." *Condon,* 148 Ill. 2d at 102-03.

We must first note that the supreme court in *Condon* did *not* find the failure of the police to knock and announce to be a *per se* constitutional violation. The reasons for the knock-and-announce rule are to: (1) notify the person inside of the presence of police and of the impending intrusion; (2) give that person time to respond; (3) avoid violence; and (4) protect privacy as much as possible. (*Condon,* 148 Ill. 2d at 103.) We find the purpose of the rule was fully served in the instant case. Tipton, Songer's roommate, responded to Agent Brotz's knock and then retreated without opening the door. Such behavior confirms that Tipton was aware of the presence of police. Agent Brotz also testified that he and another agent were dressed in "raid" uniforms—black jackets with "police" printed on both sides.

Further, Brotz and the other agent were accompanied by two uniformed sheriff's deputies. In addition, Brotz had his weapon drawn. Based upon all these circumstances, we find that it was not unreasonable to assume that Tipton was clearly made aware of the presence of law enforcement officers prior to their entry. It would be useless for the officers to wait any further for a response under these circumstances.

The amount of time which elapses between a police announcement and their entry is also relevant to determine the reasonableness of the officers' conduct when they execute a search warrant. (*People v. Saechao* (1989), 129 Ill. 2d 522, 533, 544 N.E.2d 745, 749-50.) The facts and circumstances of each case must be examined in making a determination as to reasonableness. (*People v. Boykin* (1978), 65 Ill. App. 3d 738, 740, 382 N.E.2d 1369, 1371-72; *People v. Mathes* (1979), 69 Ill. App. 3d 275, 278, 387 N.E.2d 39, 41.) This court in *Boykin* upheld the reasonableness of a forcible entry where the elapsed period of time between the knock and entry was 10 seconds. (*Boykin*, 65 Ill. App. 3d at 741, 382 N.E.2d at 1371-72.) In *Mathes*, this court found the forcible entry reasonable where police received no response from within the premises after waiting 15 seconds. (*Mathes*, 69 Ill. App. 3d at 278-79, 387 N.E.2d at 42.) Here, Brotz testified that he waited approximately 45 seconds to a minute before using his sledgehammer to make the entry after knocking. We believe Tipton had sufficient time to respond and that the officers acted in a constitutionally reasonable manner in executing the search warrant.

For the reasons indicated, we affirm defendant Songer's conviction.

Affirmed.

GORMAN and STOUDER, JJ., concur.