**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180368-U

Order filed June 17, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0368 Circuit No. 17-CF-326 |
| | ) | |
| REUBEN BISHOP, | ) ) | Honorable Clark E. Erickson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Daugherity and Lytton concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The State proved defendant guilty beyond a reasonable doubt of both UPWF counts, and counsel did not provide ineffective assistance by failing to file a motion to sever the UPWF counts from the other offenses charged.

¶ 2    Defendant, Reuben Bishop, appeals his convictions for attempted first degree murder, home invasion, aggravated battery with a firearm, and two counts of unlawful possession of a weapon by a felon (UPWF). Defendant argues the State failed to prove him guilty beyond a

reasonable doubt of either UPWF count, and that counsel provided ineffective assistance by failing to file a motion to sever the UPWF charges. We affirm.

¶ 3                                          I. BACKGROUND

¶ 4          On June 7, 2017, the State charged defendant via information with attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2016)), home invasion (*id.* § 19-6(a)(3)), and aggravated battery with a firearm (*id.* § 12-3.05(e)(1)). On June 22, 2017, a grand jury indicted defendant on those charges and two additional counts of UPWF (*id.* § 24-1.1(a)). The UPWF counts alleged that "defendant, a person who has been convicted of a felony *** , knowingly possessed *** a shotgun" and that defendant "knowingly possessed *** a rifle."

¶ 5          The case proceeded to a jury trial, where the evidence showed that defendant and Paul King were neighbors and knew each other for approximately 17 years. King and defendant disagreed over the boundary line separating their respective properties. King testified that, on the afternoon of June 7, 2017, defendant used a truck and a shovel to dump "a lot of debris" onto King's front lawn. King called the police, and defendant removed the debris after speaking with the responding officers.

¶ 6          Later that evening, as King watched television in his bedroom, he heard defendant's voice coming from outside. King recognized defendant's voice because of their numerous interactions over the years. King testified that defendant "was kind of ranting and raving, whooping and hollering *** about me previously calling the sheriff to have him clean up the mess *** that he had thrown on—into my lawn." King's window burst, such that he initially believed that defendant threw something through the window. However, King then realized he had been shot. King suffered buckshot wounds to his face, torso, and leg. King said, "The next thing I know [defendant] was *** in my house beating me with a shotgun." King described the

2

gun as "a single barrel shotgun." At one point, defendant aimed the gun at King and pulled the trigger, but it did not fire. During their physical altercation, defendant struck King repeatedly with both the gun and his fists.

¶ 7    While King was in the hospital recovering from his injuries, he observed a photographic lineup. King identified defendant's picture as his attacker.

¶ 8    Approximately one month prior to trial, King found a spent shotgun shell casing outside his bedroom window.

¶ 9    Detective Joni Hart of the Kankakee County Sheriff's Department testified that, during defendant's arrest, defendant pointed to an officer's firearm and said, "[T]hat's a nice gun. I don't have one of those, but I got a 12-gauge and you ain't going to find it." Hart obtained and executed a search warrant on defendant's residence, where she discovered a box of 12-gauge shotgun shells, with shells missing, and a rifle. Hart testified that a shotgun would fire shotgun shells, whereas the rifle would fire a different type of ammunition. Hart could not determine whether anyone other than defendant lived in the residence.

¶ 10    Detective Kraig Horstmann of the Kankakee County Sheriff's Department testified that the damage to King's bedroom window and the adjacent walls was consistent with buckshot being fired from a shotgun into the bedroom from outside. Horstmann corroborated Hart's testimony regarding the rifle and the box of 12-gauge shotgun shells with shells missing. Horstmann also found a piece of mail bearing defendant's name and the residence's address.

¶ 11    The parties stipulated that defendant was previously convicted of a felony.

¶ 12    Defendant testified that he co-owned his residence with his two sisters. Defendant said that, on the day in question, he shared his residence with four other people who had lived there for 18 months prior to the altercation. According to defendant, he became annoyed when King

3

called the police on him. After defendant removed the debris, he played cards at a friend's house. Defendant denied shooting or striking King. Defendant also denied any knowledge of the rifle and shotgun shells that officers discovered in his residence. Defendant testified that he did not own a shotgun.

¶ 13    The jury found defendant guilty of all charged offenses.

¶ 14    In the section of the presentence investigation report entitled "Defendant's Version of Present Offense," defendant argued that trial counsel provided ineffective assistance by not sharing discovery in a timely manner, failing to file pretrial motions challenging the search warrant and King's statements identifying defendant as the attacker, and using trial tactics that defendant considered ineffectual. Defendant raised similar arguments in a handwritten letter submitted to the court. The court conducted a preliminary *Krankel* hearing to address defendant's claims. After questioning both defendant and trial counsel extensively, the court found no basis to appoint new counsel.

¶ 15    The court sentenced defendant to 40 years' imprisonment for attempted first degree murder, 30 years' imprisonment for home invasion, and two terms of 20 years' imprisonment for UPWF—one term for each UPWF conviction. The court did not sentence defendant for aggravated battery with a firearm. The court ordered the sentences for attempted first degree murder and home invasion to run consecutively, while the UPWF sentences were to run concurrently with the attempted first degree murder sentence and each other. Defendant appeals.

¶ 16                                    II. ANALYSIS

¶ 17                            A. Sufficiency of the Evidence

¶ 18    Defendant first argues the State failed to prove either UPWF charge beyond a reasonable doubt where (1) the conclusion that defendant possessed a shotgun relied primarily on King's

4

testimony, and (2) officers found the rifle in defendant's residence, which he claimed to share with four other people at the time, and defendant denied any knowledge of the rifle.

¶ 19　　　　"A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). It is not our function to retry a defendant who challenges the sufficiency of the evidence. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011). Instead, we must ask whether, " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact must "resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts." *People v. Gray*, 2017 IL 120958, ¶ 35. A reviewing court will not replace the trier of fact's judgment with its own regarding the weight of the evidence or witnesses' credibility. *Id.* "A conviction may be based upon circumstantial evidence ***." *People v. Huff*, 29 Ill. 2d 315, 320 (1963). A single witness's testimony, if positive and credible, is sufficient to support a conviction. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). The trier of fact need not "search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt." *People v. Russell*, 17 Ill. 2d 328, 331 (1959).

¶ 20　　　　Under the Criminal Code of 2012 (Code), a person previously convicted of a felony may not "knowingly possess on or about his person or on his land or in his own abode *** any weapon prohibited under Section 24-1 of this Act." 720 ILCS 5/24-1.1(a) (West 2016). "Even where there is no physical possession, constructive possession may exist where there is an intent and capacity to maintain control and dominion over the contraband, and this may be proved by

showing that the defendant controlled the premises where it was found." *People v. Drake*, 288 Ill. App. 3d 963, 969 (1997). "Constructive possession is almost always subject to proof by circumstantial evidence." *People v. Walker*, 2020 IL App (1st) 162305, ¶ 20. Control over the premises where weapons are found gives rise to the inference that a defendant possessed those weapons. *People v. Smith*, 191 Ill. 2d 408, 413 (2000); *People v. Hammer*, 228 Ill. App. 3d 318, 323 (1992). "Proof that others also used the premises is insufficient to overcome the finding of defendant's exclusive dominion and control." *Hammer*, 228 Ill. App. 3d at 323.

¶ 21                                               1. The Shotgun

¶ 22        Defendant's argument challenging his UPWF conviction for possessing a shotgun relies on the First District's decision in *People v. McLaurin*, 2018 IL App (1st) 170258, ¶¶ 24-28, to support the conclusion that possession of a firearm cannot be proven solely by eyewitness testimony. However, defendant's reply brief acknowledges that our supreme court reversed the First District in *People v. McLaurin*, 2020 IL 124563, ¶¶ 36-40, and concedes that the State's argument on this issue is well taken. As we are bound by *McLaurin*, 2020 IL 124563, we accept defendant's concession and find the State proved defendant guilty beyond a reasonable doubt of possessing a shotgun in violation of section 24-1.1(a) of the Code where King testified that defendant struck him with a "single barrel shotgun," defendant told officers that he had a 12-gauge shotgun that they would not find, and the officers found shotgun shells at defendant's residence. Accordingly, we affirm defendant's UPWF conviction for possessing a shotgun after being convicted of a felony.

¶ 23                                               2. The Rifle

¶ 24        Defendant argues the State failed to prove possession of the rifle beyond a reasonable doubt because defendant testified that four other people lived in the residence at the time and that he had no knowledge of the rifle.

¶ 25        Defendant compares this case to *People v. Wolski*, 27 Ill. App. 3d 526, 527 (1975), where officers executed a search warrant on the defendant's basement apartment, which he shared with his brother. *Id.* The defendant testified he was absent from the apartment for a period of three days, beginning the day before the search, and that people were in and out of the apartment frequently. *Id.* The First District reversed defendant's conviction for marijuana possession, finding "there is no corroborating evidence linking the defendant to the contraband other than the bare fact that it was found in the apartment which he shares with his brother." *Id.* at 528.

¶ 26        However, in *People v. Hester*, 87 Ill. App. 3d 50, 54 (1980), we rejected the *Wolski* court's conclusion that corroborative evidence connecting a defendant to the contraband in question was always necessary to support a possession conviction, finding that "the bare fact that contraband is found in an apartment or dwelling under the control of a defendant is, in and of itself, sufficient to give rise to an inference of knowledge and possession." *Id.* We clarified that "[t]his inference is sufficient to sustain a conviction absent other facts and circumstances casting doubt on the guilt of the defendant[,]" and that *Wolski* was a case "where other facts and circumstances were presented which did give rise to doubt." *Id.*

¶ 27        Additionally, the instant case is factually distinguishable from *Wolski*. In *Wolski*, officers were able to confirm that the defendant shared his apartment with his brother; here, the officers who searched defendant's residence were unable to determine whether anyone other than defendant lived there. See *Wolski*, 27 Ill. App. 3d at 527. In *Wolski*, the evidence showed that people frequently entered and exited the defendant's apartment, lowering the likelihood that the

7

contraband belonged to the defendant; no such evidence was presented here. See *id.* While defendant testified that he shared his residence with four other people, and that he had no knowledge of the rifle, the evidence provided no support for these assertions. In finding defendant guilty of the offenses charged, the jury demonstrated that it did not find defendant's testimony credible; on appeal, we will not disturb a trier of fact's credibility determinations. See *Gray*, 2017 IL 120958, ¶ 35 ("[A] court of review will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses."). We can infer defendant's knowledge and possession of the rifle because officers discovered it in his residence, which was under his control, and no additional evidence presented creates a reasonable doubt as to defendant's constructive possession of the rifle. See *Hester*, 87 Ill. App. 3d at 54; *People v. Loggins*, 2019 IL App (1st) 160482, ¶ 47 ("[C]ontrol over the area generally can be inferred when the area is within the defendant's residence.").

¶ 28　　　From our review of the record, the facts presented, viewed in the light most favorable to the State, proved beyond a reasonable doubt that defendant possessed the rifle found in his residence, and that he had previously been convicted of a felony. See 720 ILCS 5/24-1.1(a) (West 2016); *Collins*, 106 Ill. 2d at 261.

¶ 29　　　　　　　　　　　B. Ineffective Assistance of Counsel

¶ 30　　　Next, defendant argues defense counsel provided ineffective assistance by failing to file a motion to sever the UPWF charges. The State contends that defendant forfeited this argument because he did not raise it during the preliminary *Krankel* inquiry into his other ineffective assistance claims. Generally, a defendant must object to a purported error at trial and include it in a posttrial motion to preserve it for review. *People v. Sebby*, 2017 IL 119445, ¶ 48. However, "our supreme court has carved out a narrow exception to this rule where the error is of a

8

constitutional dimension." *People v. Edwards*, 2020 IL App (1st) 170843, ¶ 19 (citing *People v. Cregan*, 2014 IL 113600, ¶ 18). In the interest of judicial economy, "a constitutional issue that is properly raised at trial and that can be raised in postconviction proceedings is not subject to forfeiture though it is not raised in a posttrial motion." *Id.* (citing *Cregan*, 2014 IL 113600, ¶¶ 18, 20). Defendant's ineffective assistance claim is a constitutional issue, as "[b]oth the United States Constitution and the Illinois Constitution guarantee criminal defendants the right to effective assistance of counsel." *People v. Blackwood*, 2019 IL App (3d) 160161, ¶ 18 (citing U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8). While defendant did not include his ineffective assistance argument in a posttrial motion, "judicial economy favors addressing the otherwise forfeited issue on direct appeal rather than requiring a defendant to file a postconviction petition." *Edwards*, 2020 IL App (1st) 170843, ¶ 19.

¶ 31        We analyze a defendant's claim of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). To prevail, defendant must show that "his attorney's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *People v. Patterson*, 192 Ill. 2d 93, 107 (2000). Because a defendant must satisfy both *Strickland* prongs, "the failure to satisfy either prong precludes a finding of ineffective assistance of counsel." *Id.*

¶ 32        Defendant argues that defense counsel's failure to file a motion to sever the UPWF charges was objectively unreasonable, and it increased the likelihood that defendant would be convicted of the three most serious charged offenses. Even assuming, *arguendo*, that defense counsel's performance fell below an objective standard of reasonableness, defendant cannot demonstrate that he was prejudiced by counsel's allegedly deficient performance. The evidence

9

concerning the three most serious charged offenses—attempted first degree murder, home invasion, and aggravated battery with a firearm—showed that King called law enforcement on defendant over a dispute concerning the boundary line between defendant's and King's respective property. King, who recognized defendant's voice through contact with him for many years, overheard defendant voicing his frustration that King called the police. During that rant, King was shot through his bedroom window. Defendant was then on top of King, beating him with a single barrel shotgun and his fists. During a photographic lineup, King identified defendant as his attacker. Further, the officers' investigations corroborated King's account of the altercation: Horstmann testified that the damage to King's residence was consistent with a shotgun firing buckshot into the bedroom from outside; Hart testified that defendant said that he owned a 12-gauge shotgun that the officers would not find; Hart discovered a box of 12-gauge shotgun shells in defendant's residence, with shells missing; and King found a spent shotgun shell outside his bedroom window. The evidence indicating defendant's guilt vastly outweighed the evidence suggesting defendant's innocence, which consisted entirely of defendant's own uncorroborated testimony that he was elsewhere when the altercation occurred.

¶ 33    Defendant failed to satisfy the prejudice prong of the *Strickland* test by showing that, but for defense counsel's allegedly deficient performance, the outcome of the proceedings concerning the three most serious charged offenses would have been different. See *id.* Thus, defendant cannot prevail on his ineffective assistance claim. See *id.*

¶ 34                                III. CONCLUSION

¶ 35    The judgment of the circuit court of Kankakee County is affirmed.

¶ 36    Affirmed.